UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,
                              Plaintiff,                         21-CV-10366 (JPO)

              -v-                                                OPINION AND ORDER

AMERICAN RENAL ASSOCIATE
HOLDINGS, *et al.*,
                              Defendants.

J. PAUL OETKEN, District Judge:

       Plaintiff Securities and Exchange Commission ("SEC") brings this action against

Defendants Jonathan L. Wilcox, Jason M. Boucher, and Karen J. Smith, alleging violations of

the Securities Act and the Exchange Act.  (Dkt. No. 1.)[1]

       Before the Court is Defendants' motion to transfer this action to the District of

Massachusetts pursuant to 28 U.S.C. § 1404(a).  For the following reasons, Defendants' motion

is granted.

I.     **Background**

       A.     **Factual Allegations**[2]

       In December 2021, the SEC's Washington, DC office filed a complaint alleging that

Defendants engaged in a fraudulent revenue recognition scheme intended to make ARA's

financial performance appear better than it actually was.  (Compl. ¶ 1.)  ARA partners with

---

[1] American Renal Associates Holdings, Inc. ("ARA") was originally a defendant in this case.
However, with ARA's consent, the Court entered a final judgment against ARA on December 8,
2021.  (Dkt. No. 11.)  ARA was subsequently terminated from this action.

[2] The following facts, drawn from the Complaint (Dkt. No. 1 ("Compl.")), are presumed true for
the purposes of this Opinion and Order.

doctors across the United States to operate dialysis clinics as joint ventures.  (Compl. ¶ 7.)  In these joint ventures, the doctors handle all patient care and ARA handles billings, collections, revenue management, and patient insurance issues.  (*Id.*)  During the relevant period, ARA received a large amount of its revenue from insurance reimbursement for dialysis treatments.  (*Id.*)

Because ARA did not know what rate different insurance companies would pay for dialysis treatments, revenue recognition involved two steps:  ARA first estimated the revenue it would receive and then updated this estimate after receiving information about the amount ARA was actually paid.  (Compl. ¶ 8.)  These updates are called "topside adjustments" and ARA's accounting standards required that ARA base these adjustments on patient-level payment information.  (Compl. ¶ 8–9.)

However, Defendants allegedly did not do what was required by internal accounting standards.  Instead, Wilcox, ARA's Chief Financial Officer, and Boucher, ARA's Chief Accounting Officer, agreed on how much overall revenue they wanted ARA to have every month or quarter, and then Boucher and Smith, ARA's Controller, had ARA accounting staff enter different topside adjustments to meet this predetermined number.  (Compl. ¶ 10.)  The SEC alleges that Defendants engaged in additional deceptive practices, including manipulating which patients' payment histories were analyzed to make it appear that ARA had more revenue than it did; recognizing the revenue only when needed; manufacturing false and misleading documents to ARA's external auditors; and misstating or omitting descriptions of topside adjustments in discussions with ARA's CEO and Audit Committee.  (Compl. ¶ 13.)

II.    **Discussion**

A.    **Legal Standard**

Under 28 U.S.C. § 1391(b), venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of that property that is subject of the action is situated." Though Defendants concede that venue is proper in the Southern District of New York, they seek a discretionary transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) gives district courts broad discretion to decide whether to transfer venue. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court.").

In deciding a motion to transfer venue under § 1404(a), courts must first inquire "whether the action *could* have been brought originally in the transferee forum." *Siegel v. Ford*, No. 16 Civ. 8077, 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017) (quoting *Berger v. Cushman & Wakefield of Penn., Inc.*, No. 12 Civ. 9224, 2013 WL 456256, at *3 (S.D.N.Y. Aug. 28, 2013)). Here, it is undisputed that the action could have been brought in the District of Massachusetts. (Dkt. No. 25 at 4–5; Dkt. No. 29 at 8.)

The second inquiry is "whether transfer would be an appropriate exercise of the Court's discretion." *Robertson v. Cartinhour*, No. 10 Civ. 8442, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011). To determine whether transfer is appropriate, the Court must balance nine factors: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses;

3

(6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *SEC v. Hill Int'l, Inc.*, No. 20 Civ. 447, 2020 WL 2029591, at *3 (S.D.N.Y. Apr. 28, 2020) (internal quotation marks omitted).  In evaluating these factors, courts may consider factual submissions, including declarations by a defendant.  *Id.*

      **B.**      **Analysis**

            **1.**      **Factors Favoring Transfer**

                    **a.**      **Locus of Operative Facts**

The locus of operative facts is a "primary factor in determining a § 1404(a) motion to transfer . . . . This factor substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *Hill Int'l*, 2020 WL 2029591, at *4 (internal citation and quotation marks omitted).  "To determine the locus of operative facts, a court must look to the site of the event from which the claim arises." *AVEMCO Ins. Co. v. GSF Holding Corp.*, No. 96 Civ. 8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (internal citation and quotation marks omitted).

Here, the central facts giving rise to SEC's claims occurred in ARA's headquarters, which was and still is located in Beverly, Massachusetts.  The Complaint alleges that Wilcox and Boucher "developed their own system for topside adjustments, and their system was little more than a fraudulent scheme wherein Wilcox, Boucher, and Smith booked millions of dollars in topside adjustments that were not based on patient-level detail, but instead booked to meet predetermined financial metrics."  (Compl. ¶ 77.)  The alleged scheme, which was "undertaken on a monthly basis," involved the following:  First, Boucher made initial topside adjustments on his own (Compl. ¶ 78); second, Wilcox and Boucher would determine the "correct" amount of topside revenue to take for ARA (Compl. ¶ 79); and third, Boucher directed Smith and junior

personnel acting at her direction to enter topside adjustments equal to what Boucher and Wilcox had determined was the correct amount (Compl. ¶ 80). This alleged scheme, and the conduct behind executing the scheme, all occurred in Massachusetts. Similarly, the Complaint alleges that Defendants misled and made false statements to their Audit Firm, located in Massachusetts. These allegations include that Smith and Boucher "instructed their staff to withhold from the Audit Firm" handwritten notes documenting the adjustments that Boucher and Wilcox had calculated and failing to disclose to the firm that "they had ordered ARA employees to create support for journal entries that did not exist when the Audit Firm made the request." (Compl. ¶¶ 140–50.)

The SEC characterizes this factor as "neutral," contending that the Southern District of New York is as much the locus of operative facts as the District of Massachusetts. The SEC first argues that Defendants directly transmitted materially false and misleading information to Centerbridge, ARA's largest investor, and Audit Committee Chair Jureller, both located in this District. (Dkt. No. 29 at 9.) However, "[w]hen examining claims for misrepresentation on a motion to transfer venue, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Branthover v. Goldenson*, No. 10 Civ. 7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (internal quotation marks omitted). It is of little or no relevance that Defendants made misrepresentations to persons or entities located in New York, as it is undisputed that Defendants were in Massachusetts when the alleged statements were made.

And second, the SEC argues that the fraudulent conduct had its greatest impact in New York because Defendants broadcasted misleading information to Centerbridge and other investors and investment analysts located here. (Dkt. No. 29 at 9.) Similarly, the SEC contends

that ARA's stock was traded on the New York Stock Exchange and that Smith sold stock during the fraud. (*Id.*)

The district court's reasoning in *Hill International* is helpful in analyzing the SEC's arguments. There, the court considered the fact that the defendant traded on the New York Stock Exchange, that some of the investors and analysts who accessed and traded in reliance on the defendant's false statements were located in New York, and that two firms that provided financial support for the defendant's secondary offering of common stock were located in New York. *Hill Int'l*, 2020 WL 2029591, at *4. Moreover, the SEC in *Hill International* alleged that the defendant used an investor relations firm based in New York in connection with the secondary offering. *Id.* But the court concluded that the "limited events at issue" that occurred in New York did not make this factor neutral. *Id.* Similarly here, while the SEC has identified a few ways in which the scheme touched the Southern District of New York, "the 'center of gravity' of this [case] unavoidably is the location at which the accounting fraud took place." *Hill Int'l*, 2020 WL 2029591, at *5.

### b.    Convenience of Witnesses

The convenience of witnesses is often one of the most important considerations in deciding a motion to transfer. *See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Id.* (internal quotation marks omitted).

For many of the same reasons as the locus of operative facts, this factor favors transfer to the District of Massachusetts. "That is because, while both the SEC and [Defendants] recite the names of possible trial witnesses, the factual disputes on which a trial in this case would likely

6

turn center on internal events and communications within [ARA's] accounting department." *Hill Int'l*, 2020 WL 2029591, at *6. Based on the SEC's Complaint, the most central persons are Wilcox, Boucher, and Smith, and additional fact witnesses will likely include other ARA employees in its accounting department who have knowledge of ARA's accounting practices during the relevant time period and employees from the audit firm. (Dkt. No. 25 at 9.) All these witnesses reside and work in Massachusetts. Though the SEC named three New York-based witnesses — the Chair of ARA's Audit Committee, a Centerbridge Employee, and an investment analyst (Dkt. No. 29 at 10) — that it would call to testify at trial, these witnesses were not identified by name in the Complaint and, more importantly, none of them are alleged to have firsthand knowledge of the fraudulent scheme described in the Complaint. At most, these witnesses have only knowledge of the scheme based on emails or documents created by the witnesses who reside in Massachusetts. Though the SEC notes its willingness to depose any Massachusetts-based witness in their home state, the Court nevertheless concludes that this favor weighs in favor of transfer.

### c.    Convenience of Parties

This factor is less important than the previous two factors considered, but the Court concludes that the convenience of the parties weighs slightly in favor of transfer. Defendants all live in Massachusetts and would need to stay in a hotel in the New York City area for the duration of trial if the case were tried here, as would the additional six witnesses identified by Defendants.

The SEC argues that transferring the case would merely shift the convenience from one party to another. (Dkt. No. 29 at 11.) But this is not so. Washington-based SEC counsel brought this action against Defendants and will be litigating this case, *not* the New York office,

so counsel for the SEC would still need to travel even if the case were to be tried in New York. And though the SEC contends that a transfer would increase travel time for its counsel litigating this case, there are many daily flights from DC to Boston that are often less expensive and take less time than a train ride from DC to New York.  The Court therefore concludes that this factor favors transfer.  *See Ritchie Capital Mgmt., LLC v. U.S. Bank Nat. Ass'n*, No. 14 Civ. 8513, 2015 WL 1611391, at *5 (S.D.N.Y. Apr. 10, 2015) ("No party resides in New York . . . . A transfer, on balance, would therefore be much more convenient for the defendant, while not enhancing (or hindering) plaintiffs' convenience.  Under such circumstances, this factor 'clearly' supports a transfer.")

### d.     Relative Means of the Parties

Defendants argue that litigating this case in New York would be much more burdensome for them.  (Dkt. No. 25 at 9.)  In all three of their declarations, Wilcox, Boucher, and Smith explain that litigating in New York would be a financial burden.  (*See* Dkt. No. 22 ¶ 9 (Wilcox explaining that the costs and burdens of travel, as well as the time away from his family and job, would impose a "personal hardship"); Dkt. No. 23 ¶¶ 12–13 (Boucher explaining that he would incur "significant financial costs that may not [be] covered by insurance"); Dkt. No. 24 ¶¶ 11–12 (same).)  The SEC contends that Defendants have not met their burden in establishing that this factor weighs in favor of transfer because they only state that some of the costs *may* not be covered by insurance.  (Dkt. No. 29 at 12.)  But as the district court in *Hill International* noted, based on its experience, "insurance carriers do not invariably cover all costs incurred by an indemnified party; that certain costs (*e.g.*, hotel, meal and transportation costs of the indemnified party) may fall outside of an insurer's obligation to cover the party's legal expenses; and that, depending on the outcome of the proceeding, the insurer that has advanced coverage costs may

then assert a right, in whole or part, to disclaim coverage and seek repayment." *Hill Int'l*, 2020 WL 2029591, at *7.

The SEC does not make any argument that its means are limited. Indeed, the fact that Washington-based counsel are bringing this case in New York suggests that cost considerations are not a major factor for the agency here. This factor, though of limited importance, favors transfer.

### 2.    Factors Opposing Transfer

The sole factor weighing against transfer is the SEC's choice of this forum. "It is well settled that the plaintiff's choice of forum is given great weight." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012). Thus, this choice "will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998). Importantly, the plaintiff's choice of venue is given less deference where (1) the operative facts have little connection to the chosen district or (2) the plaintiff's residence is not the chosen forum. *See Easy Web*, 888 F. Supp. 2d at 348–49.

Here, the reason behind SEC's choice of New York is unclear, given that the vast majority of operative facts occurred in Massachusetts, the key witnesses and Defendants reside in Massachusetts, the SEC has an office in Boston, and counsel from the New York SEC office is not litigating this case. Relying on *S.E.C. v. KPMG, LLP*, No. 03 Civ. 671, 2003 WL 1842871, at *4 (S.D.N.Y. Apr. 9, 2003), the SEC contends that its largest regional office, located in this District, "will provide the SEC with the resources, support and convenient location to work from if this case proceeds to trial." (Dkt. No. 29 at 13.) But *KPMG* is distinguishable. There, the SEC brought an action in the Southern District against defendants located in Stamford, Connecticut. *KPMG*, 2003 WL 1842871, at *4. Unlike in this case, the *KPMG* court

concluded that many "events important to the claims in the Complaint are described as having occurred in New York," and "defendants critical to this lawsuit are and were located in and working from New York." *Id.* Moreover, while the SEC does maintain a regional office in Boston, there does not appear to be any SEC offices in Connecticut, making its argument of convenience more appealing in the *KPMG* case. *See* "SEC Regional Offices," U.S. Sec. & Exch. Comm'n, https://www.sec.gov/page/sec-regional-offices (last visited Apr. 18, 2022).

"Accordingly, the SEC's choice of forum does not alone shift, or come close to shifting, the balance of factors so as to favor this District." *Hill Int'l*, 2020 WL 2029591, at *8 (cleaned up).

### 3. Neutral Factors

The remaining factors are neutral and do not affect the transfer analysis.

First, as the SEC notes, the vast majority of relevant documents are electronically stored and can be electronically transmitted. (Dkt. No. 29 at 13.) Any non-electronic documents can easily be sent via fax, scan, or other means. *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is a largely neutral factor in today's world of faxing, scanning, and emailing documents."). Second, both parties agree that the availability to compel attendance is a neutral factor since the parties have nationwide power to compel witness attendance. *See* 15 U.S.C. § 78aa. Third, the forum's familiarity with governing law is of little importance here. Though the SEC contends that courts in this district have an expertise in securities law (Dkt. No. 29 at 15), the Court is confident that the District of Massachusetts is equally familiar with the federal law governing the claims the SEC is asserting against Defendants. Finally, the factors of trial efficiency and the interests of justice are also neutral. While this Court approved the consent

judgment with ARA, this did not provide the Court with any familiarity of the pending litigation.

This case is in its early stages of litigation and will therefore not be impacted by a transfer.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion to transfer venue is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 19 and to transfer

this case to the District of Massachusetts.

SO ORDERED.

Dated:  April 20, 2022
          New York, New York

_____
                                 J. PAUL OETKEN
                               United States District Judge

11